NORTHWEST OHIO BAR ASSOCIATION *v*. ARCHER.

[Cite as *Northwest Ohio Bar Assn. v. Archer*,

**129 Ohio St.3d 204, 2011-Ohio-3142.]**

*Attorneys at law — Misconduct involving dishonesty — One-year license suspension.*

(No. 2010-2270 — Submitted February 16, 2011 — Decided July 5, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 10-015.

_____

**Per Curiam**.

{¶ 1} Respondent, Stephen Robert Archer of Defiance, Ohio, Attorney Registration No. 0031376, was admitted to the practice of law in Ohio in 1978. On August 11, 1993, we publicly reprimanded him for neglecting a client's bankruptcy matter. *Northwest Ohio Bar Assn. v. Archer* (1993), 67 Ohio St.3d 97, 616 N.E.2d 210, 211.

{¶ 2} On February 8, 2010, relator, Northwest Ohio Bar Association, filed a complaint alleging that respondent had committed several violations of the Ohio Code of Professional Responsibility by failing to submit the requisite forms or pay unemployment taxes and by failing to remit the federal-, state-, and local-income-tax and Medicare and Social Security withholdings from his secretary's wages to the proper governmental authorities.

{¶ 3} A panel of the Board of Commissioners on Grievance and Discipline heard the cause and considered the parties' joint stipulations of fact, law, and proposed penalties. The panel adopted the parties' stipulated facts and Disciplinary Rule violations, but rejected some of the stipulated aggravating and mitigating factors and proposed sanction.

**{¶ 4}** The board adopted the panel's findings of fact and misconduct and concluded that respondent had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and that his conduct adversely reflects on his fitness to practice law.

**{¶ 5}** Citing respondent's prior disciplinary record, his "mixed appreciation" for the gravity of his misconduct, and the subsequent lapse of his malpractice insurance and failure to inform his clients that he is not insured, the board has rejected the parties' stipulated sanction of a one-year partially stayed suspension and recommends that we suspend respondent from the practice of law for one full year. No objections have been filed.

**{¶ 6}** We adopt the board's findings of fact and misconduct and conclusions of law and suspend respondent from the practice of law in Ohio for one year.

### Misconduct

**{¶ 7}** Respondent's misconduct came to light when his secretary separated from her employment and applied for unemployment-compensation benefits in February 2008. Because respondent had neither filed the appropriate forms nor paid unemployment taxes from late 2004 until February 1, 2008, as required by Ohio law, the secretary's claim was denied. After receiving an unfavorable judgment on appeal, the secretary filed a grievance with relator. By April 8, 2008, the necessary paperwork had been filed, and all taxes and penalties had been paid. As a result, the secretary's application for unemployment benefits was approved. Approximately seven weeks after she had applied, she received unemployment benefits retroactive to the date of her original application.

**{¶ 8}** Relator's investigation also revealed that during the secretary's employment, respondent withheld local, state, and federal taxes — including income, Medicare, and Social Security taxes — from the secretary's wages but failed to remit the taxes and the requisite paperwork to the appropriate

governmental authorities. Instead, he converted these funds to his own use. The parties, however, have not stipulated the amount of the funds converted, relator did not offer the secretary's W-2's into evidence, and the respondent testified that the amounts he recalled paying included the payment of his delinquent personal-income taxes and penalties. Nonetheless, the record clearly and convincingly demonstrates that respondent violated DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).[1]

### Sanction

{¶ 9} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 10} The parties have stipulated that respondent's prior disciplinary record is an aggravating factor. See BCGD Proc.Reg. 10(B)(1)(a). The board also found that respondent's failure to pay his unemployment taxes and to remit multiple tax withholdings to the appropriate governmental authorities constitute

---

1. Respondent's misconduct occurred both before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

multiple offenses and that his failures harmed a vulnerable employee. See BCGD Proc.Reg. 10(B)(1)(d) and (h). In addition, the board recognized the lapse of respondent's malpractice insurance, coupled with his failure to inform his clients of that lapse as required by Prof.Cond.R. 1.4(c), as an aggravating factor.

{¶ 11} As mitigating factors, the parties stipulated and the board found that respondent paid monetary sanctions in the form of penalties for the late payment of taxes and demonstrated a cooperative attitude toward these disciplinary proceedings. See BCGD Proc.Reg. 10(B)(2)(c) and (d).

{¶ 12} The parties also stipulated that respondent submitted character letters from two attorneys and a former client. See BCGD Proc.Reg. 10(B)(2)(e). The first attorney, who has known respondent for almost 30 years, wrote that respondent "is very conscientious, very thorough in his preparation, and very caring in his dealing with clients," that he has found [respondent's] ethical standards to be "above reproach," and that respondent is "an honest and good man and a fine lawyer." The second attorney has known respondent for approximately 20 years and has dealt with him regularly, primarily in the context of domestic relations. She states that she has known respondent "to be very honest and forthright and [has] never even had an inkling or a concern as to the truth or veracity of anything he has said." She reports, "[H]e is perceived by the local bar as being very honest" and that she considers him to be a "good man." The final letter, from a client who has known respondent for almost 30 years, having retained him to handle both business and personal matters, states that respondent has "always performed ethically, properly and efficiently for [him] and the company." He believes that respondent "is a good man and * * * an outstanding attorney!"

{¶ 13} The board, however, rejected the parties' stipulation that respondent's conduct was not driven by a dishonest or selfish motive, observing

4

that he had offered several explanations for his misconduct and that his expressions of remorse were inconsistent. See BCGD Proc.Reg. 10(B)(2)(b).

{¶ 14} Respondent stated that his financial situation was "[n]ot great" when the secretary called him out of the blue seeking work, and he claimed that various health problems, including diabetes and a minor stroke, had made it hard for him to concentrate. He testified that his business had ebbed and flowed and that he had had just barely the income to fund the secretary's net paycheck. He stated that once he had let the tax payments lapse, it was easy to continue that pattern.

{¶ 15} Although respondent expected a large settlement to be "the pot of gold that could make everything right," he claimed that his plan derailed when he suffered a heart attack and required quintuple-bypass surgery just one week after the settlement was paid. Despite some expressions of remorse, he cast himself as the victim of his circumstances and blamed his spiteful secretary for exploiting his misconduct. But respondent offered no documentary evidence to substantiate any of this testimony. Moreover, the board observed that respondent had stipulated to engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

{¶ 16} The parties have stipulated that a one-year suspension with six months stayed is the appropriate sanction for respondent's misconduct. In support of that sanction, they cite *Toledo Bar Assn. v. Abood*, 104 Ohio St.3d 655, 2004-Ohio-7015, 821 N.E.2d 560; *Disciplinary Counsel v. Large*, 122 Ohio St.3d 35, 2009-Ohio-2022, 907 N.E.2d 1162; and *Geauga Cty. Bar Assn. v. Bruner*, 98 Ohio St.3d 312, 2003-Ohio-736, 784 N.E.2d 687.

{¶ 17} While each of these cases involves misconduct comparable to that of respondent's, the board observed that the aggravating and mitigating factors unique to each case resulted in a range of sanctions. For example, in *Abood*, the attorney had failed to pay personal-income taxes for eight years and had deposited proceeds from a personal real estate transaction into his client trust account to

avoid IRS collection. *Abood*, 104 Ohio St.3d 655, 2004-Ohio-7015, 821 N.E.2d 560, ¶ 6. Abood's default on his tax obligations lasted approximately twice as long as respondent's and involved significant IRS collection measures. Id. at ¶ 3-4, 19. But like respondent, Abood fully cooperated in the disciplinary investigation and submitted favorable character references. Id. at ¶ 9-10. Additional mitigating factors present in *Abood* — including the attorney's lack of a prior disciplinary record, his efforts to self-report his conduct once he realized that he was the subject of an IRS investigation, his sincere remorse, and the imposition of criminal sanctions — justified the imposition of a one-year suspension with six-months conditionally stayed. Id. at ¶ 9, 11, 19-20.

{¶ 18} At the opposite end of the spectrum, Bruner had failed to remit $42,982.80 in taxes that he had withheld from his secretary's wages over ten years and had given her fraudulent W-2 forms each year in an effort to conceal his theft. *Bruner*, 98 Ohio St.3d 312, 2003-Ohio-736, 784 N.E.2d 687, at ¶ 3-4. Although Bruner had filed the documents necessary to assess his tax liability at the time of his disciplinary hearing, he had not begun to make restitution, falsely attributed his misconduct to a lack of business acumen before conceding that he had defaulted on his tax obligations because his practice was not making enough money, and failed to appreciate the gravity of his misconduct. Id. at ¶ 5-7. Therefore, we indefinitely suspended Bruner from the practice of law. Id. at ¶ 8. Respondent's conduct, however, is less egregious than Bruner's because it lasted less than half as long, and respondent had made full restitution prior to the filing of relator's complaint.

{¶ 19} In *Large*, we imposed a one-year license suspension on an attorney who, for five years, had failed to file personal-income tax returns, had failed to withhold income taxes and Social Security contributions from his employees' wages, and had failed to report his employees' wages to the IRS. *Large,* 122 Ohio St.3d 35, 2009-Ohio-2022, 907 N.E.2d 1162, ¶ 4, 13, 15, 21. Like the

respondent in this case, Large established that he was a person of good character and reputation and fully cooperated in the disciplinary proceedings. Id. at ¶ 17. He also had no prior disciplinary record and had served six months of probation in a community confinement center and six months of electronically monitored home confinement after pleading guilty to federal criminal charges arising from this misconduct. Id. at ¶ 10, 17. See BCGD Proc.Reg. 10(B)(2)(a) and (f). Large did not convert his employees' withholdings, because he had not withheld taxes from their wages, but he had failed to make restitution, even after he had received a $72,000 fee, and he had acted with a selfish desire to delay the collection of his personal-income taxes. Id. at ¶ 13, 17.

{¶ 20} Having independently considered respondent's four-year pattern of misconduct and balanced his good reputation in the legal community and payment of restitution against his prior disciplinary action, his mixed appreciation for the gravity of his misconduct, and his failure to inform his clients that he does not carry malpractice insurance, we agree that a one-year suspension is the appropriate sanction for respondent's misconduct.

{¶ 21} Accordingly, Stephen Robert Archer is suspended from the practice of law in Ohio for one year. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

John Donovan, for relator.

_____